(No. 3501—)

HELEN KLEMICK, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 14, 1943.*

*Supplemental Opinion filed May 18, 1944.*

*Petition for Rehearing allowed September 12, 1944.*

*Second Supplemental Opinion filed March 14, 1945.*

M. D. MORAHN, for claimant.

GEORGE F. BARRETT, Attorney General; GLEN A. TREVOR AND WILLIAM L. MORGAN, Assistant Attorneys General, for respondent.

FISHER, J.

This claim was filed May 18, 1940, and the record of the case completed on June 8, 1943.

The record consists of the complaint, transcript of testimony on behalf of claimant, abstract of evidence, stipulation and statement, brief and argument for claimant and respondent by respective counsel.

Claimant alleges that she was employed as an attendant at the Manteno State Hospital, operated by the Department of Public Welfare, State of Illinois, and that while so employed on or about August 13, 1939, she contracted typhoid fever due to the drinking of contaminated water which was supplied from the wells of the institution; that as a result of this illness, she incurred obligations for medical and hospital services, and that she has become totally and permanently disabled.

Claimant seeks compensation for total permanent disability, and a pension for life as provided by the Workmen's Compensation Act and the payment of medical expenses incurred by reason of her illness.

No jurisdictional questions are involved, and it is conceded that claimant and respondent were operating under and subject to the provisions of the Workmen's Compensation Act.

There is no proof whatever in this record that claimant contracted her illness as a result of drinking contaminated water, and no proof of the source of the infection. There is no proof that the water or food furnished by the institution to employees and inmates was in any manner contaminated, or contained typhoid bacilli. The record shows that claimant became ill with typhoid fever while employed by respondent as an attendant at the Manteno State Hospital, and that she was at that time living at the institution. The determination of this claim on its record alone would necessitate the denial of an award, for the reason that there is no proof that the injury arose out of and during the course of claimant's employment.

However, this court has before it for consideration at this September term, 1943, the case of *Mary Ade, claimant* vs. *State of Illinois, respondent*, #3429, in which

case it is stipulated by respondent that a typhoid fever epidemic existed at the Manteno State Hospital, Manteno, Illinois, from July 10, 1939, to December 10, 1939. By reason of this stipulation of record before us, we have knowledge that a typhoid fever epidemic existed at the Manteno State Hospital from July 10, 1939, to December 10, 1939.

Respondent contends that this claim should not be allowed for the reason that there is no proof that the water in the institution was contaminated with typhoid bacilli.

In the case of *Permanent Construction Company* vs. *Industrial Commission,* 380 Illinois 47, it was held that an injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resultant injury.

Claimant herein worked as an attendant at the institution during a period of time when a typhoid fever epidemic existed at the institution. Her work required her to care for infected patients; to handle their clothing and otherwise administer to their needs. She contracted typhoid fever. We believe it reasonable to conclude that she contracted her illness during the course of and within the scope of her employment.

The facts herein are similar to the case of Mary Ade #3429 hereinbefore referred to in which case we discussed the law at length, which controls in this case. We conclude that under such facts, a claimant is entitled to the benefits of the Workmen's Compensation Act.

Claimant was unable to receive proper medical attention from respondent at the time of her illness, and it became necessary for her to secure the services of

Doctor Daniel K. Hur. She is therefore entitled to receive from respondent the necessary medical expenses incurred and temporary total disability compensation from the date of her illness; August 14, 1939, until November 22, 1940, the date of the hearing herein, except for the month of June, 1940, during which month claimant was employed and for which she has been paid. Claimant's salary including maintenance was $1,044.00 per year or $20.08 per week. Her compensation rate is 50% of her average weekly wage plus 10% or $11.04 per week. She is therefore entitled to receive for temporary total disability $11.04 per week for 61 2/7 weeks or $676.58.

By stipulation herein it is shown that claimant was paid during her illness to August 1, 1940, the sum of $675.70, which was for unproductive time, except the month of June during which she worked. Her salary for June of $63.00 was earned and the balance of $612.70 was for unproductive time, and must be deducted from the sum which she is entitled to receive as compensation.

Claimant incurred medical expenses in the sum of $217.30, and is therefore entitled to have and receive from respondent, medical services $217.30, temporary total disability compensation for 61 2/7 weeks at $11.04 per week or $676.58 or a total of $893.88 less $612.70 payment for unproductive time, leaving balance due claimant of $281.18.

Claimant also asks for permanent total disability compensation equal to the amount, which would have been payable in case of death and a pension thereafter as provided in Section 8, paragraph 20 F. of the Workmen's Compensation Act.

The evidence herein does not sustain the allegation that claimant has been totally and permanently disabled. There is much testimony as to her disability; that her

eyesight and hearing have been impaired; that she suffered from a blood clot on her leg; that she is suffering from colitis, myocarditis and nervousness and that she is a typhoid carrier.

Doctor Daniel K. Hur testified that claimant's nervous system was such that she was more or less unstable at the time of his last examination; about November 10, 1940, "which was probably due to the long periods of illness in the hospital." She complained of pains in the joints of the body, but Doctor Hur could not say that this was a result of the typhoid infection. Neither did he say that the colitis and heart condition was a direct result of the typhoid infection. He did say that she is a typhoid carrier, and that this condition would prevent certain kinds of employment, and that "she has to get only a certain kind of a job."

Claimant may be entitled to additional compensation. Her measure of damages is 50 per cent of the difference between what she was earning at the time of the injury, and what she is now able to earn at suitable employment. (Sec. 8, para. D Workmen's Compensation Act.)

For the reason that we believe claimant may be entitled to further compensation, we retain jurisdiction of this claim for the purpose of making such further order as may be shown to be proper.

An award is entered in favor of claimant, Helen Klemick, in the sum of Two Hundred Eighty-one Dollars and Eighteen Cents ($281.18), all of which has accrued and is payable forthwith.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."

FISHER, J.

This claim was considered at the September, 1943, term of this Court. In our Opinion, filed at that time, we held "that claimant was entitled to the benefits of the Workmen's Compensation Act, and was allowed $217.30 for medical services and $676.58 for temporary total disability compensation, a total of $893.88, less $612.70 payment for unproductive time, leaving the balance of the award which was made of $281.18."

We also found "that claimant might be entitled to additional compensation, and that her measure of damages would be 50% of the difference between what she was earning at the time of the injury and what she is now able to earn at suitable employment." (Sec. 8, par. D, Workmen's Compensation Act, and retained jurisdiction of this claim for the purpose of making such further order as could be shown to be proper.

Subsequent thereto, a stipulation was entered into between claimant, Helen Klemick, by her attorney, M. D. Morahn, and respondent, State of Illinois, by George F. Barrett, Attorney General, that the above named claimant might be examined by Dr. William V. Haskins, a licensed physician and surgeon of the State of Illinois, located at LaSalle, Illinois, to ascertain the present physical condition of claimant, for the purpose of having said physician prepare a detailed report, to be presented as evidence in this cause; and, in pursuance thereto, a report as to claimant's condition was filed by the said Dr. William V. Haskins. No evidence was presented other than this report.

The Court is of the opinion that the additional evidence which has been presented, is insufficient to justify a further award.

The claim for total permanent disability, pension for life, and additional compensation is, therefore, hereby denied.

SECOND SUPPLEMENTAL OPINION

FISHER, J.

Claimant seeks an award for permanent total disability compensation equal to the amount which would have been payable in case of death, and a pension thereafter, as provided in the Workmen's Compensation Act.

This claim was first considered at the September, 1943, term of this Court. At that time we concluded that claimant was entitled to compensation, and an award was entered in her favor in the sum of $893.88 less $612.70 paid to her for unproductive time. We also found that claimant might be entitled to additional compensation, which could not be granted under the record presented to us at that time. Jurisdiction of the claim was retained for the purpose of allowing claimant to present further evidence in case she desired to do so.

Claimant asked for a rehearing, which was granted, and further evidence was presented upon which the case was reconsidered; and, in a supplemental opinion, we concluded that the additional evidence which had been presented was insufficient to justify a further award. Claimant, thereupon, asked leave to make oral argument; to present further testimony by claimant; and to present additional medical testimony. This request was granted, and the claim now comes before the Court for reconsideration on the additional testimony of claimant and a medical examination made at the Manteno State Hospital by Dr. Eugene Lowenstein on November 13, 1944.

The facts in this case are fully set forth in our original opinion.

Claimant, testifying on October 27, 1944, said that she is now living in the Valley Hotel at Spring Valley, Illinois, and, in answer to the question if she were living there by reason of the order of anyone, said "Yes sir, a gentleman from the Board of Health said I was a typhoid carrier and said I was to stay in my home and not to associate with others, and that is why I was confined to my room." She stated further, that she was unable to obtain work because of the stigma of being a typhoid carrier; and further to the question

"Does the State Board of Health prohibit you from working?"

replied

"They have insisted that I can never mingle among society, never to handle food, and that is my line of work, mostly food."

Q. "Is there something restraining you from getting work and holding it?"

A. Yes, sir. In the record there is that I cannot even have my clothes sent out where others do, because I am a carrier. Dr. Baer, Managing Officer of the Manteno State Hospital told me that I could never work in the State Hospital there at Manteno again, because I would be a hazard to the patients as well as myself."

From the testimony, it appeared that claimant had been typed a typhoid carrier by the State Health Department, and had signed a Typhoid Carrier Agreement. This Agreement is now a part of the record, having been obtained and introduced into the record by the Court on its own initiative. The Agreement is, in part, as follows:

4/20/40

TYPHOID CARRIER AGREEMENT

"Permission is hereby granted to Helen Veronica Klemick, a typhoid or paratyphoid fever carrier, to mingle with the public at large and to resume her usual occupation as Hospital Employee (NOT A FOOD HANDLER), as long as she complies with the restrictions listed below:

SIGNED A. J. McNEIL,
 (Manteno Twp.) Health Department.
DATED May 7, 1940."

The listed restrictions are that she agrees not to handle food for persons other than her immediate family who have been immunized against typhoid fever; to use care in her personal hygiene; that she will submit specimens upon request of the Health Department; and that she will notify the Health Department of any contemplated change of her present address.

There is no restriction on the activities of the claimant or her occupation, except as a food handler. There are many gainful occupations in which claimant might engage if she is otherwise physically able and inclined to do so.

The physical examination made by Dr. Lowenstein, the report of which was filed herein on December 21, 1944, shows claimant to be 5'-3" in height and her weight to be 222¾ pounds. Her blood pressure is 210/150. It shows her vision to be 20/70, and her hearing to be diminished on one side. She is otherwise normal, except that she is a typhoid carrier.

We feel, from a reconsideration of the entire record and a consideration of the additional evidence submitted, that claimant is not totally and permanently disabled; and that her illness from typhoid fever, or any results therefrom, does not disable her from pursuing some gainful occupation and earning as much as she was able to earn prior to her illness. Her claim for total permanent disability and a pension for life, is, therefore, denied.

Claimant has, however, suffered some disability by reason of her illness, for which she should be compensated. She has, heretofore, been compensated from the date of her illness to November 22, 1940. Giving to claimant the full advantage and benefit of every reasonable doubt, we now find her disability continued to October 27, 1944, and that she is entitled to have and receive

additional temporary total compensation from November 22, 1940, until October 27, 1944, being a period of 205 weeks, at the rate of $11.04 per week, and thereafter, nothing.

An award is therefore entered in favor of claimant, Helen Klemick, in the sum of $2,263.20, all of which is accrued and is payable in a lump sum.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."